HANSON, Special Administrator, Appellant, v. VALDIVIA, Respondent.

*No. 300. Argued May 5, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 151.)

468

For the appellant there was a brief by *Oldenburg & Lent* and *Charles P. Dykman,* all of Madison, and oral argument by *Mr. Dykman.*

For the respondent there was a brief by *D'Amato & Cusack,* attorneys, and *Neal P. Nettesheim* of counsel, all of Waukesha, and oral argument by *Mr. Nettesheim.*

BEILFUSS, J. Two issues are presented on this appeal:

(1) Does a cause of action for criminal conversation or alienation of affections survive the death of the wronged party when the complaint alleges no damage to the property rights or interests of the deceased?

(2) May the special administrator of the decedent's estate maintain an action for wrongful death when there is a surviving spouse who has participated in the wrongful conduct which allegedly caused the wrongful death?

*Howard v. Lunaburg* (1927), 192 Wis. 507, 213 N. W. 301, sets forth the rule that actions for criminal conversation or alienation of affections do not survive the death of one of the parties unless the complaint includes allegations showing financial damage to the plaintiff which would pecuniarily diminish his estate. In that case the plaintiff was the wife of John F. Howard whose love and affection was allegedly alienated from her by one Elenore B. Philipp. Elenore B. Philipp was the original defendant, but she died while the case was pending and the trial court ordered that the executrix of her estate, Emma Lunaburg, continue in her place. On appeal this court reversed that order and directed that the complaint against the executrix be dismissed upon the merits.

In the *Howard* decision the court initially noted that such an action, being purely a tort action, would not have survived at common law. It then went on to inquire whether the survival statute, sec. 330.01, Stats. (now sec. 895.01), removed this type of action from the common law rule. Insofar as applicable, that section read, as it does now:

"In addition to the actions which survive at common law the following shall also survive: Actions . . . for assault and battery, false imprisonment or other damage to the person, for all damage done to the property rights or interests of another, . . ."

In commenting upon this statute the court stated, at page 510:

"It is so evident that it needs no argument to show (1) that our survival statutes have made an addition to the actions that survived at common law, but (2) that it was never the legislative intent that all actions should survive. If that had been the intent it could have been expressed by saying 'all actions shall survive' or equivalent language. The legislature has not said that. Hence, if we give the statute a construction that will result in the survival of all actions, we have misconstrued it. It is well to bear this in mind and to make it clear, for as we construe the arguments of counsel for plaintiff they seem to lead to the result that all actions survive."

In rejecting the argument that this type of action is one for damage to property rights or interests the court said, at page 511:

". . . Damage to feelings, or loss of consortium, does not constitute a property right or interest within the meaning of the statute, for if it did all actions would survive, and that was not the legislative intent. If actions for damage to property rights; for damage to the person, physically, and for damage to feelings survived, then all actions would survive, for all actions must be included in the above classes or combinations thereof. By property rights or interests was undoubtedly meant a right or interest of value that could be parted with for some pecuniary consideration, or if lost or impaired would pecuniarily diminish the estate of plaintiff."

The court then went on to consider whether this type of action is one for "other damage to the person," and in holding that it was not, said at pages 512, 513:

". . . It is true that cases may be found where the words 'injuries to the person,' 'personal injury,' and the like have been in certain contexts held to be broad enough to include acts that do not involve physical contact with the injured person, as in *Bennett v. Bennett*, 116 N. Y. 584, 23 N. E. 17; in *Holmes v. Holmes*, 133

Ind. 386, 32 N. E. 932; and in *Madden's Case*, 222 Mass. 487, 489, 111 N. E. 379, and (in a *dictum*) to include alienation of affections. *Hurle's Case*, 217 Mass. 223, 104 N. E. 336. But Massachusetts has consistently held that in the survival statute the words 'damage to the person' import physical damage and do not include the alienation of affections. *Dixon v. Amerman*, 181 Mass. 430, 63 N. E. 1057, and cases cited. It was said in the *Dixon Case*, speaking of the statutory words 'or other damage to the person:' 'It would seem that nothing could make it plainer than the words themselves do that this case [alienation of affection] does not come within them.' See, also, note to *Gross v. Ledford* (190 Ky. 526, 228 S. W. 24), 14 A. L. R. 693, where it is stated that 'the proposition laid down in the reported case, . . . that an action or cause of action for alienation of affections or criminal conversation does not survive the death of either party, is supported by the weight of authority,' citing a number of cases.

". . . As before pointed out, if damage to the person includes damage to feelings, then all actions survive, and that cannot be the proper statutory construction." [1]

The appellant asks the court to either distinguish the *Howard Case* from the instant one on its facts or to overrule it. The foundation of his argument appears to be that the decision in *Howard* was based solely upon considerations of financial interest, namely, that in 1927 the husband was thought to be entitled to the services of his wife and a loss of them would result in damage to his property rights, but that a wife was not entitled to the services of her husband, and if she lost them she had parted with nothing of financial value. From this point he argues that since a wife now has the same right of action as her husband to recover damages for criminal conversation,[2] this "financial interest" theory is no long-

---

[1] *See: Survival of action or cause of action for alienation of affections or criminal conversation,* Annot. 14 A. L. R. 693, 24 A. L. R. 488, 57 A. L. R. 351; 1 Am. Jur. 2d, *Abatement, Survival, and Revival,* pp. 108, 109, sec. 82.

[2] *Woodman v. Goodrich* (1940), 234 Wis. 565, 291 N. W. 768.

er valid and such actions should survive the death of either party.

Although there is some language of *Howard*[3] which supports the premises upon which the appellant's argument is based, we do not arrive at his conclusion. While it is true that the right of a husband to the services of his wife has been denominated as property right, the use of that label must be further explained to determine whether it is such a property right as falls within the meaning of sec. 895.01, Stats.

The right of the performance of material services, or to support in the case of the wife, as it arises from the marital relationship, is but one element of consortium, that unity of rights and duties existing between husband and wife apart from normal concepts of property rights and interests. Also included are the elements of love, companionship, affection, society, sexual relations, etc.[4] The right of consortium arises solely from the relationship created by the marriage contract and belongs only to the parties to that contract. Unless otherwise provided by statute, any event which terminates the marriage contract and therefore the marriage relationship also terminates the marital rights, duties and interests. Thus, the right to the performance of services can neither exist apart from the marriage contract nor can it be parted with for pecuniary consideration.

The distinction between the right to services as a property right and the concept of a property right as the term is used in sec. 895.01, Stats., is, in our opinion, the same as the common law distinction between non-survivable and survivable causes of action. The right to consortium or, in particular, to the performance of

[3] *Howard v. Lunaburg, supra,* page 511.

[4] *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 613, 148 N. W. 2d 65; Schreiber, *Damages in Personal Injury and Wrongful Death Cases* (PLI, 1965), pp. 359–364. *See generally:* 41 Am. Jur. 2d, *Husband and Wife,* pp. 22–26, secs. 5–9.

services is a purely personal right arising from the marriage contract and any damage to that right constitutes a purely personal wrong. Damages are permitted to compensate the injured party. But in the case of a purely personal wrong, when the injured party dies he can no longer be compensated. In spite of the fact that the right was a property right while he lived, it cannot pass to his estate so as to leave a loss for which compensation may be given. In such a case the purpose for allowing the action has ceased to exist. However, in the case of damage done to property rights or interests as the terms are used in sec. 895.01, the particular property or right which has been damaged passes to the estate of the wronged party, and the allowance of an action by the personal representative will achieve the same purpose as it would have if brought by the wronged party during his lifetime. *See:* 1 Am. Jur. 2d, *Abatement, Survival, and Revival,* pp. 86, 87, sec. 51.

Essentially what the appellant appears to be attempting is to create a cause of action for punitive damages against the alleged wrongdoer in favor of the surviving children of the wronged party. Punitive or exemplary damages may be given in an action for criminal conversation. *Paulson v. Scott* (1951), 260 Wis. 141, 50 N. W. 2d 376, 31 A. L. R. 2d 706. But the rule is well established in this state that a claim for punitive damages alone is not sufficient to support a cause of action. There must be a showing of some actual injury which would justify an award of actual or compensatory damages before punitive damages may be awarded. *See: Widemshek v. Fale* (1962), 17 Wis. 2d 337, 117 N. W. 2d 275; *Barnard v. Cohen* (1917), 165 Wis. 417, 162 N. W. 480. Since a cause of action for damage to the right to services or consortium did not pass to the estate of the wronged party it cannot have any cause of action for punitive damages alone.

The appellant's second argument is that the special administrator in this case should be allowed to maintain an action for wrongful death, with the provision that any damages recovered be impressed with a constructive trust in favor of the children of Leon and June Shada. His argument seems to be inconsistent in that while he argues that he is not attempting to give a cause of action to the children the entire basis for his argument is that equity and justice require that the children be allowed to recover for the wrongful death of their father.

The case of *Cogger v. Trudell* (1967), 35 Wis. 2d 350, 151 N. W. 2d 146, expressly holds that pursuant to sec. 895.04 (2), Stats., surviving children do not have a cause of action for the wrongful death of one of their parents when the decedent is survived by his or her spouse, and the fact that the surviving spouse was responsible for the death does not create a new cause of action in the children. When there is a surviving spouse the action must be brought by or on behalf of that spouse, and the only special protection afforded the children is that the court may, in its discretion, impose a lien in favor of the children on the amount recovered, not in excess of 50 percent of the recovery. And if the surviving spouse is barred from maintaining a claim by reason of his negligence or other wrongful conduct, any award to the children, by whatever means it is accomplished, would necessarily violate sec. 895.04 (2) which specifically limits the amount which the court may set aside for the children.

In the instant case the appellant's action would be barred no matter which theory he uses to support it. If he is bringing the action on behalf of the children, then it is barred because the decedent's spouse, June A. Shada, is still living. If he is bringing it on behalf of the surviving spouse, then it is barred because the complaint alleges on its face that June A. Shada was a

participant in the conduct which allegedly caused Leon Shada's wrongful death.

The appellant's argument that the action should be allowed on behalf of June A. Shada with a constructive trust in favor of the children imposed on any sums recovered in our opinion cannot prevail. The underlying principle of a constructive trust is the equitable prevention of unjust enrichment. *Weber v. Sunset Ridge, Inc.* (1955), 269 Wis. 120, 68 N. W. 2d 706, 70 N. W. 2d 5; 89 C. J. S., *Trusts,* p. 726, sec. 15, p. 1015, sec. 139, p. 1027, sec. 142. Unjust enrichment arises where there is a receipt by one person from another of a benefit, the retention of which would be unjust. In this case, had the surviving spouse already profited from her wrongful conduct in contributing to her husband's death then the application of a constructive trust to any profit which she received as a result might be appropriate. In such a case the law would normally operate to pass legal title to property to her, and the impression of a constructive trust would compel her to surrender the profits of her unlawful conduct. But in this situation the operation of another rule of law specifically prevents her from receiving such title, *i.e.,* the rule that she is barred from maintaining an action for wrongful death by her own participation in the alleged wrongful conduct. The rule operates to prevent the need for a constructive trust from ever arising. A constructive trust can only be applied to some specific *res* to which the party has acquired legal title. Here, such a *res* has not and cannot come into existence.

*By the Court.*—Order affirmed.